Charles W. TARGETT, Plaintiff,

v.

UNITED STATES of America; United States Department of the Army; United States Nuclear Regulatory Commission, Defendants.

No. C 82 0489 WTS.

United States District Court, N.D. California.

Oct. 20, 1982.

Howard H. Jewel, Frank D. Russo, Russell Youmans, Jewell & Leary, Oakland, Cal., and Allan J. Favish, Los Angeles, Cal., for plaintiff.

Joseph Russoniello, U.S. Atty., Stephen A. Shefler, Asst. U.S. Atty., San Francisco, Cal., J. Paul McGrath, Susan P. Engelman, Asst. U.S. Attys., Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a civil action brought under the Federal Tort Claims Act ("FTCA") (28 U.S.C. § 2671 *et seq.*) by plaintiff Charles Targett, a former member of the United States Army, against defendants United States of America ("the Government"), the United States Department of the Army and the United States Nuclear Regulatory Commission. Targett alleges that he sustained personal injury as a result of certain conduct of the Government. He seeks damages for his alleged injuries.

■ Jurisdiction over all defendants is alleged under 28 U.S.C. § 1346(b) which provides district courts with exclusive jurisdiction over civil actions against the United States for personal injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.[1]

■ The case is now before the court on the Government's motion to dismiss on the grounds that the court lacks jurisdiction over the subject matter of the action and that the action fails to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(1) and (6). Specifically, the Government contends that Targett's claim is barred both by the *Feres* doctrine and by FTCA's statute of limitation.

In his complaint, which allegations we accept as true for the purposes of this motion, Targett alleges that during 1954 and 1955, he was a member of the United States Army and was stationed at Camp Desert Rock, Nevada; that while there, the Government caused him to be exposed to ionizing radiation on numerous occasions, and specifically, that the Government caused him to be exposed to a nuclear detonation.

Targett further alleges that he was discharged from active duty in November 1955; that he suffered a loss of body hair in 1961; that he became aware in 1969 that he had developed a pituitary tumor; and that since 1969, he has undergone two brain operations and extensive therapy.

Targett further alleges that, subsequent to his discharge in 1955, the Government was aware, or should have been aware, that they had caused him to be exposed to uncertain forms and dosages of radiation; that,

subsequent to his discharge, the Government learned, or should have learned, of the hazards and risks involved in exposure to radiation, of the need to conduct long-term medical surveillance of persons exposed to radiation, and of the fact that loss of body hair could serve as warning of radiation injury; and finally, that the Government never informed him about the risks involved in exposure to radiation, never put him under medical surveillance, and never informed him of the physical warning signs.

## I. The Standard on the Government's Motion to Dismiss

■ Preliminarily, the court notes that in evaluating the sufficiency of Targett's complaint on this motion to dismiss, we follow the well-settled rule that a complaint shall not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Any doubt as to the character of the claim stated must be resolved in favor of the pleader. *Taylor v. Breed,* 58 F.R.D. 101 (N.D.Cal.1973). We turn now to the Government's contentions.

## II. Sovereign Immunity and the Feres Doctrine

The government first contends that Targett's claim falls within the *Feres* doctrine, a judicially-created exception to the broad waiver of governmental immunity provided for by Congress under the FTCA.

In *Feres,* the Supreme Court denied recovery to servicemen for injuries which they had sustained while on active duty as a result of the negligence of others in the armed forces. The Court, enunciating this

---

1. Section 2679(a) of the FTCA provides in pertinent part that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." It is well-settled under this section and section 1346(b) that the only proper party in a suit under the FTCA is the United States. *Edelman v. Federal Housing Administration,* 382 F.2d 594 (2d Cir.1967); *Miller v. United States,* 458 F.Supp. 363, 364, n. 1 (D.P. R.1978). Thus, defendants United States Department of the Army and the United States Nuclear Regulatory Commission are not amenable to suit under the FTCA and the court, *sua sponte,* dismisses them as improper parties.

much-maligned, but long-standing doctrine, concluded that "the Government is not liable under the FTCA for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1952).

While the *Feres* doctrine has been broadly applied, the Supreme Court has allowed recovery under the FTCA where negligent acts were committed by the Government after the claimant had left the service. *Brown v. United States,* 348 U.S. 110, 113, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954). In *Brown,* the Supreme Court held that a discharged veteran could maintain an action under the FTCA for injuries allegedly caused as a result of negligent treatment at a Veterans Administration hospital after his discharge from the military service. The knee injury which necessitated his presence in the hospital was originally incurred while he was in the service; however, the court focused on the fact that the negligent act which caused additional injury—the use of a defective tourniquet—took place after discharge and held that the claim was not barred by the *Feres* doctrine. *Ibid.*

Recently, the Ninth Circuit was confronted with a case involving factual allegations which are in pertinent part virtually identical to those in our pending case. In *Broudy v. United States,* 661 F.2d 125 (9th Cir. 1981), the wife of a serviceman brought a claim under the FTCA, alleging that the Government had caused her husband to be exposed to radiation testing. There, appellant's husband Broudy served as an officer in the United States Marine Corps from 1944 to 1960. During the summer of 1957, he was ordered by his commanding officers to participate in military exercises in the immediate vicinity of at least two atmospheric nuclear tests conducted in the Nevada desert.

Broudy was discharged from the service in 1960 and for several years after was examined and treated for various health problems at Government medical facilities, but was not informed of or warned about the dangers associated with his exposure to

radiation. In 1976, he was diagnosed as having a form of cancer that has been medically-related to low level radiation exposure. He died from that disease in 1977.

Appellant alleged that prior to her husband's exposure, the government knew that nuclear radiation exposure could cause cancer and other maladies that manifest themselves years after the actual exposure. Appellant also alleged that the Government failed to fulfill a duty to warn her husband about radiation's potential effects both before and after exposing him to it and to monitor and treat him after he left the service. *Id.* at 126, 128.

The district court, relying on *Feres* and its progeny, granted the Government's motion to dismiss.

The Ninth Circuit affirmed that portion of the district court's decision dismissing appellant's claim for recovery based on the Government's negligence in exposing him to radiation while he was in the service. *Id.* at 127.

As to appellant's claim that the Government had breached a duty to her husband after he had left the service, the Ninth Circuit vacated the district court's order of dismissal with prejudice and remanded. The court, relying on the Supreme Court's decision in *Brown,* noted that "recovery [for injury to servicemen] has been allowed only when the claimant alleges a 'separate' or 'independent' negligent act occurring 'entirely after discharge.'" *Broudy,* at 128 (citations omitted). Conversely, it noted that "[r]ecovery has been denied when the claimant merely alleges an in-service tort continuing after discharge." *Ibid.* (citations omitted).

Applying this distinction to the facts before it, the Ninth Circuit stated:

We agree that if appellant can allege and prove an independent, post-service negligent act on the part of the Government, her claim would be cognizable under the FTCA. The Government's failure to warn Major Broudy of and monitor any possible injuries arising from his exposure to radiation *might* constitute such

an act *if the Government learned of the danger after Major Broudy left the service.* Id. at 128–29. (emphasis added).

Thus, the issue here is whether Targett has alleged an independent, post-service negligent act on the part of the Government. Specifically, the issue becomes whether Targett has alleged that the Government "learned of the danger" arising out of his exposure to radiation only after he left the service.

■ The Government contends that Targett's claim is based on a continuing tort which occurred both before and after discharge and that, therefore, it should be barred by the *Feres* doctrine. However, a fair reading of the complaint shows that Targett's claim is based on alleged Government conduct occurring entirely after his discharge from the Army.

As noted earlier, Targett alleges in his complaint that, while he was in the service, the Government caused him to be exposed to radiation; and that, after his discharge from active duty in November 1955, he suffered a loss of body hair, became aware that he had developed a pituitary tumor, and has undergone two brain operations.

Targett further alleges that, "subsequent to . . . [his] discharge . . ., defendants were aware, or reasonably should have been aware that they caused plaintiff to be exposed to uncertain forms and dosages of ionizing radiation." (Complaint, ¶ 6); that, "[s]ubsequent to plaintiff's discharge . . ., defendants learned or should have learned of the hazards and risks involved with such radiation exposure;" that "defendants also learned, or reasonably should have learned, of the need to conduct long-term medical surveillance of persons exposed to ionizing radiation, as well as the need to inform such persons and their physicians of the possible risks, hazards, effects and circumstances of radiation exposure;" and that "defendants also learned, or reasonably should have learned, of the bodily changes, including hair loss, that could serve as warning signs of radiation injury, and the need to inform plaintiff and his physician of these warning signs." (Complaint ¶ 7).

Targett further alleges that "[s]ubsequent to plaintiff's discharge . . ., defendants . . . had a duty to inform plaintiff or his physician of the hazards and risks involved as a result of his exposure to ionizing radiation . . . and to conduct continuing medical surveillance of plaintiff." (Complaint ¶ 8).

Finally, Targett alleges that, "[s]ubsequent to plaintiff's discharge . . ., the defendants unreasonably failed to conduct any medical surveillance of the plaintiff" and failed "to inform the plaintiff or his physician of the hazards, risks, effects and circumstances of his radiaition [sic] exposure, as well as the . . . significance of bodily changes, including hair loss, that could serve as warning signs of radiation injury." (Complaint ¶ 9).

Nowhere in the complaint does Targett allege that the Government breached a duty owed to him while he was in the service. Nowhere does Targett allege that the Government "learned of the danger" to him of radiation exposure prior to his discharge from the service. It is true that Targett alleges that his exposure to radiation and the Government's failure to monitor the precise dosage and forms of radiation to which he was exposed occurred while he was in the service. (Complaint ¶¶ 3–4). However, Targett does not allege that the Government breached any duty owed to Targett predicated on these in-service acts and omissions. In sum, Targett's claim is based entirely on alleged post-service conduct by the Government and not on a continuation of in-service tortious conduct.

Viewing the complaint in a light most favorable to Targett and in light of our obligation to follow the recent Ninth Circuit decision in *Broudy,* we conclude that Targett's claim is not barred by the *Feres* doctrine. Thus, provided Targett's claim was timely brought, his claim is cognizable under the FTCA.

### III. *The Statute of Limitations*

The Government also contends that Targett's claim is barred by the statute of limitations.

■ Title 28 U.S.C. § 2401(b) provides in pertinent part as follows:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues . . .

The requirement of filing a timely claim with the appropriate federal agency is jurisdictional in nature and must be satisfied before a suit under the FTCA can be maintained. *Bailey v. United States,* 642 F.2d 344, 346 (9th Cir.1981); *Caton v. United States,* 495 F.2d 635, 637 (9th Cir.1974).

■ The general rule under the FTCA is that a claim accrues at the time of the injury for most type of torts. *Davis v. United States,* 642 F.2d 328, 330 (9th Cir. 1981). The fact of injury usually provides adequate notice of the cause of injury and of the possibility that one's legal rights have been invaded. *Stoleson v. United States,* 629 F.2d 1265, 1268 (7th Cir.1980).

■ However, in medical malpractice actions and actions where, as here, the nature of the tort obscures either the existence or cause of injury, courts have consistently followed the so-called "discovery" rule. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Davis,* 642 F.2d at 330; *Stoleson v. United States, supra,* 629 F.2d at 1268–69; *Schnurman v. United States,* 490 F.Supp. 429, 433–35 (E.D.Va.1980). Under the discovery rule, a claim accrues when the claimant discovers or, in the exercise of reasonable diligence, should have discovered, the critical facts of injury and causation. *United States v. Kubrick,* 444 U.S. at 120–22, 100 S.Ct. at 358–59.

■ In our pending case, the record[2] shows that Targett presented a written claim to the Department of the Army—"the appropriate federal agency"—on April 23, 1981. Thus, the issue here is whether Targett knew or should have discovered the facts regarding causation and injury on or before April 23, 1979—at least two years prior to the filing of his administrative claim. If so, then his claim is barred by the statute of limitations.

■ In support of their argument that plaintiff's action is time-barred, the Government refers to Targett's contact with legal counsel in July 1978. The Government also refers to and attaches as exhibits a letter dated July 29, 1978 from attorney Steven Kazan to the Defense Nuclear Agency inquiring as to "programs and remedies Targett may have in connection with his exposure and subsequent development of brain tumors"; a letter from the Defense Nuclear Agency dated August 21, 1978 in response to Kazan's letter, informing Targett's counsel of "procedures available to . . . individuals who believe they may be disabled as a result of exposure to . . . radiation"; and, finally, Targett's application to the Veteran's Administration, dated December 20, 1978, seeking compensation and describing the nature of his injuries as "Brain Tumors—exposed to radiation on atomic bomb testing—have 50% lose (sic) of sight." The Government contends that these documents indicate that Targett possessed the critical facts regarding his injury and its cause prior to April 23, 1979.

However, the documents relied on by the Government establish only that Targett knew before April 23, 1979 that *one* of the potential causes of his health problems was his exposure to radiation. As discussed earlier, Targett's claim is based entirely on the Government's alleged post-discharge failure to inform him of the risks of exposure to radiation; on its post-discharge failure to inform him as to the significance of certain physical symptoms; and on its post-discharge failure to provide him with long-term medical surveillance. Nowhere in the documents presented by the Government is there any evidence to the effect that Targett knew or should have known prior to April 23, 1979 that the alleged post-service acts or omissions of the Government were

---

**2.** A district court may rely on affidavits and other evidentiary material to make factual findings in deciding a question of jurisdiction under F.R.Civ.P. 12(b)(1). *Bailey v. United States,* 642 F.2d at 347.

additional, contributing causes of his health problems.

To the contrary, Targett alleges in his unverified complaint that he did not discover that there was a causal relation between his health problems and the Government's post-discharge conduct until March 1981. Targett also submits an affidavit of June 11, 1982, stating that he was first informed by his physician in March 1981 that, had the Government notified him subsequent to his discharge of the significance of his exposure to radiation and of the significance of physical symptoms, he probably could have avoided extensive surgery, medical treatment and resulting disability; that his physician also informed him at that time that, had the Government conducted routine medical surveillance prior to 1969, his pituitary tumor could have been diagnosed at an earlier date; and finally, that, prior to 1981, he had no knowledge of the causal connection between the Government's failure to conduct medical surveillance—including informing him of warning signs—and his health problems. (Targett, aff. at 1–2).

Since Targett's uncontroverted affidavit shows that he did not possess the knowledge of the critical facts regarding the post-discharge cause of his health problems until March 1981, and since nothing in the record indicates that Targett could or should have discovered those facts any earlier, his claim based on the Government's post-discharge conduct was filed well within two years of the accrual of his claim under the FTCA statute of limitations.

Accordingly, the Government's motion to dismiss is denied.